## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————
|  |  |  |
|---|---|---|
| MBAREK SRYFI | : | Jury Trial Demanded |
|  | : |  |
|  | : |  |
| Plaintiff, | : |  |
| v. | : |  |
|  | : | Civil Action No. 24-567 |
| TRUSTEES OF THE | : |  |
| UNIVERSITY OF PENNSYLVANIA, | : |  |
|  | : |  |
| Defendants. | : |  |

———————————————————————:

Plaintiff, Mbarek Sryfi by and through his attorneys, Derek Smith Law Group, PLLC, hereby files the following civil action complaint against Defendants, Trustees of the University of Pennsylvania ("Penn" or "Defendant"). Plaintiff's Charge of Discrimination also named the following individuals who aided and abetted the discriminatory conduct alleged: (1) Heather Sharkey, (2) Christina Frei, (3) Joseph Lowry, and (4) Jeffrey Kallberg. Plaintiff's case is presented to remedy violations of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); the Americans with Disabilities Act, as amended, 42 U.S.C. §12102 et. seq. ("ADA"); and the Age Discrimination Employment Act ("ADEA").

Plaintiff's Charge of Discrimination was filed at the Equal Employment Opportunity Commission and dual filed with the Pennsylvania Human Relations Commission ("PHRC"), and the Philadelphia Commission on Human Relations ("PCHR"). Plaintiff will add claims against the individual Defendant under the Pennsylvania Human Relations Act and the Philadelphia Fair Practice Ordinance when Plaintiff is legally permitted, under the Commonwealth and City antidiscrimination laws.

## PARTIES

1.     Plaintiff, Mbarek Sryfi ("Mr. Sryfi" or "Plaintiff") is an adult male who resides in Newtown, Pennsylvania 18940.

2.     Defendant, Trustees of the University of Pennsylvania ("Trustees" or "Penn" or "Defendant") is a business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of service at 255 South 36th Street, Philadelphia, PA 19104.

3.     Trustees is a public agency of the Commonwealth of Pennsylvania Department of Human Services and receives public funding including funding through Medicaid and Medicare.

4.     At all times relevant to this civil action, Heather Sharkey ("Ms. Sharkey"), was employed Penn and worked in the Department of Near Eastern Languages and Civilizations.

5.     At all times relevant to this civil action, Christina Frei ("Ms. Frei"), was employed by Penn and held the position, Executive Director of Language instruction.

6.     At all times relevant to this civil action, Paul Cobb ("Mr. Cobb"), was employed by Penn and worked in Department of Near Eastern Languages and Civilizations.

7.     At all times relevant to this civil action, Jeffrey Kallberg ("Mr. Kallberg"), was employed by Penn and held the position, Associate Dean.

8.     At all times relevant to this civil action, Penn was Plaintiff's employer.

9.     Plaintiff was employed by Penn and worked as a Lecturer in Foreign Languages in the Department of Near Eastern Languages and Civilizations (hereinafter "NELC").

10.     The individuals identified above held supervisory authority over Plaintiff and used that authority to subject Plaintiff to a tangible employment action by intentionally separating Plaintiff from his employment and causing Plaintiff to suffer economic losses and other losses more fully set forth below.

## JURISDICTION AND VENUE

11.     Jurisdiction in this Court is proper as Plaintiff's case is presented to remedy violations of federal statutes, including Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1981.

12.     Plaintiff intends to add additional counts for violations of the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance "PFPO") when Plaintiff is legally permitted to do so.

13.     The Commonwealth and City laws require Plaintiff to exhaust his administrative remedies before filing in Court.

14.     Plaintiff filed a Charge of Discrimination under the PHRA and the PFPO in March 2023.

15.     Plaintiff may file in court under the Commonwealth and City antidiscrimination laws sometime after April 2024.

16.     This Court does have supplemental jurisdiction over any Commonwealth Law Causes of Action or causes of action under Philadelphia ordinance.

17.     Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants, worked in Philadelphia County, lives in Bucks County, and the events that gave rise to Plaintiff's claims occurred within the Eastern District of Pennsylvania jurisdiction.

18.     Sometime around March 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

19.     Plaintiff's Charge was dual filed with the PHRC and the PCHR.

20.     All of the employees named above were identified by name in Plaintiff's Charge of Discrimination.

21.     Plaintiff's rights under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance will be ripe for suit one year after Plaintiff's Charge of Discrimination was dual filed at the PHRC and the PCHR .

22.     The EEOC issued and sent a Dismissal and Notice of Rights to Plaintiff which set forth the requirement that Plaintiff file a civil action within ninety (90) days of the Dismissal and Notice of Rights.

23.     This action is hereby commenced within ninety (90) days of the date when Plaintiff received  the Dismissal and Notice of Rights which is dated and sent to Plaintiff on November 9, 2023.

## MATERIAL FACTS

24.     At all times relevant to this civil action, Plaintiff, Mbarek Sryfi, was a Lecturer in Foreign language, in the NELC department.

25.     Plaintiff taught Aribic in the NELC department, and for a time, Plaintiff also held the position, Coordinator of the Arabic Program.

26.     Plaintiff began his employment with Penn around July 2004, as a Lecturer of Aribic in the NELC department.

27.      Plaintiff's employment continued for nearly twenty years, until Defendants separated Plaintiff from his employment sometime around June 2023.

28.     Plaintiff worked in Defendants' Philadelphia offices located at 255 South 36th Street, Philadelphia, PA 19104.

29.     During his employment, Plaintiff was praised for his performance as a Lecturer.

30.     Defendant promoted Plaintiff the year before Plaintiff's termination, and asked Plaintiff to take on more responsibility as the Coordinator of the Aribic Program.

31.     Plaintiff, Mbarek Sryfi was terminated and replaced with an employee who was significantly younger such that the circumstances of Plaintiff's termination and replacement create an inference that Plaintiff's termination was motivated by age discrimination.

32.     Defendant terminated Mbarek Sryfi and replaced his with a much younger person.

33.     Defendant also terminated another older employee, Emad Rushdie, who was fifty-six (56) years old at the time of the termination.

34.     Defendant replaced Emad Rushdie with a person who was significantly younger than both Emad Rushdie and Mbarek Sryfi.

35.     Within a two year time, Defendants significantly lowered the average age of Aribic Lecturers by separating two much older employees and replacing them both with two much younger employees.

36.     The reasons offered by Defendant to explain the termination of both Emad Rushdie and Mbarek Sryfi were pretextual.

37.     The same decision-makers behind Emad Rushdie's termination made the decision to terminate Mbarek Sryfi.

38.     It was reported that Paul Cobb said that the objective was to hire "younger lecturers" with "more energy."

39.     It was reported that Heather Sharkey and Christina Frei said that Emad Rushdie was "getting old" and that the University was looking for someone "more energetic."

40.     Plaintiff,  Mbarek Sryfi held the position of Coordinator of the Arabic Program until Plaintiff was replaced by another person who was significantly younger.

41.     Plaintiff remained employed by Defendant for nearly twenty years, from 2004 until June 30, 2023.

42.     Plaintiff's employment ended when Defendant intentionally separated Plaintiff from his employment.

43.     The separation caused Plaintiff to suffer economic losses and other losses including emotional harm, loss of enjoyment of life, and other nonpecuniary losses.

44.     Mbarek Sryfi was told that the reason for the separation of employment was due to Mbarek Sryfi's age.

45.     Plaintiff was told that the termination was part of a plan to end the employment of older employees and make room for younger employees.

46.     Plaintiff was told that he was part of an older generation that needed to be replaced.

47.     The words said to Plaintiff were that Plaintiff was part of an "older era that needed to end."

48.     Plaintiff was informed that the plan was to replace older employees with younger employees.  The terminology that was used to express these objectives was that they needed to "make room for new blood."

49.     These comments were made Joseph Lowry and Healthy Sharkey, around June 2022, in the context of separating Plaintiff from the Coordinator of the Arabic Program position.

50.     Almost the exact same thing happened to Emad Rushdie.

51.     Emad Rushdie held the position of Coordinator of the Arabic Program position.

52.     Defendant separated Emad Rushdie from the Coordinator of the Arabic Program position, as a precursor to the termination which followed soon thereafter.

53.     Plaintiff, Mbarek Sryfi was also separated from the Coordinator of the Arabic Program position, as a precursor to the termination which followed soon thereafter.

54.     The person who replaced Mbarek Sryfi in the Coordinator of the Arabic Program position, was much younger.

55.     At the time, Plaintiff was sixty-one (61) years old.

56.     Plaintiff's replacement for the Coordinator of the Arabic Program position, was at least twenty years younger.

57.     Plaintiff was notified that the decision to remove Plaintiff from the Coordinator position had nothing to do with performance or disciplinary issues.

58.     Defendant admitted that the decision was motivated by the objective to hire new blood.

59.     Defendant explained what this meant and Plaintiff was informed that the decision was about filling the position with someone younger.

60.     Plaintiff had never been subject of discipline.

61.     Plaintiff was not the subject of performance issues.

62.     Defendant removed Plaintiff from the position of Coordinator of the Arabic Program and the position was assigned to a significantly younger, female employee.

63.     Within a two year period, Defendant continued to replace older employees with younger employees.

64.     This discriminatory policy specifically impacted the Department of Near Eastern Languages and Civilizations.

65.     Joe Lowry openly spoke about the motivation to end the employment of Plaintiff as early as September 2021.

66.     Discriminatory comments about replacing older employees with younger people were made several times by people like Paul Cobb, Joseph Lowry, Heather Sharkey, and Christina Frei.

67.     Christina Frei spoke in front of witnesses, about the unlawful motivation to develop a pretextual reason for separating Plaintiff from his employment.

68.     Christina Frei said that they needed to "build a case" against Plaintiff in order to end Plaintiff's employment.

69.     Plaintiff was subjected to discrimination because of his age, race and disability which led to Plaintiff being subjected to adverse employment actions including but not limited to removal a position and termination.

70.     Defendant attempted to build a case against Plaintiff and disparage Plaintiff, so that Defendant could try and justify illegal decisions.

71.     Plaintiff stated a desire to continue his employment.

72.     Defendant refused to allow Plaintiff to continue his employment.

73.     In December 2022, Defendant notified Plaintiff that the separation was coming and there was nothing Plaintiff could do to stop it.

74.     Defendant informed Plaintiff that his final semester teaching at Penn in the Department of Near Eastern Languages and Civilizations would be the Spring Semester, 2023.

75.     Plaintiff's final semester would have started in January 2023.

76.     Plaintiff was scheduled to begin his final semester in January 2023, however, Plaintiff suffered significant and severe emotional distress caused by Defendant's discriminatory and disparate treatment.

77.     After almost twenty (20) years of hard work and dedication, Defendant informed Plaintiff that his final semester was about to begin, and that there was nothing Plaintiff could do or say to change the decision.

78.     Plaintiff was informed that the decision was based on something Plaintiff had no control over – his membership in a protected class.

79.      Plaintiff's age, disability and race caused Plaintiff's termination.

80.     Plaintiff suffered severe mental anguish, loss of enjoyment of life, loss of appetite, loss of sleep, and other issues related to the emotional distress caused by the illegal conduct and decisions.

81.     In December 2022, Plaintiff sought medical treatment because of the metal anguish and emotional distress.

82.     Plaintiff was temporarily disabled by his primary care physician and Plaintiff was unable to begin work in January 2023, due to his medical condition and the recommendation of treating medical providers.

83.     Plaintiff informed Defendant and decision makers in the NELC department about Plaintiff's emotional distress, and the cause for needing medical treatment.

84.     Plaintiff engaged in protected activity to report and oppose the discriminatory comments directed at Plaintiff.

85.     Plaintiff was subjected to severe and pervasive harassment due to Plaintiff's membership in the above referenced protected classes and the hostile work environment got worse after Plaintiff's engaged in protected activity.

86.     At all times relevant to this Charge, Plaintiff suffered from a disability under the Americans with Disabilities Act ("ADA").

87.     Plaintiff's disability and injuries were sustained when Plaintiff was in an auto accident sometime around 2008.

88.     Plaintiff's auto accident injuries qualify as a disability under the ADA because Plaintiff's injuries significantly impact major life activities, including, sleeping, eating, exercising, cleaning, and other activities of daily living.

89.     At all times relevant to this civil action, Defendant had actual notice of Plaintiff's disabilities.

90.     Plaintiff informed Defendant, and decision makers in the NELC department that Plaintiff suffered injuries in an auto accident.

91.     Plaintiff requested reasonable accommodations due to his disabilities under the Americans with Disabilities Act.

92.     Defendant subjected Plaintiff to a campaign of discrimination and harassment in the workplace due to Plaintiff's disability.

93.     Plaintiff engaged in protected activity by reporting the discrimination and harassment in the workplace.

94.     Plaintiff's reports of discrimination and harassment in the workplace resulted in the discrimination and harassment getting worse.

95.     Instead of helping Plaintiff and initiating an investigation aimed toward eliminating the discrimination and harassment in the workplace, Defendant ignored Plaintiff's reports and refused to initiate corrective action.

96.     Defendant instead permitted the discrimination and harassment to continue and get worse.

97.     Plaintiff sent reports of discrimination and harassment in the workplace to Dean Jeffrey Colberg and Plaintiff met with Dean Colberg in an attempt to report discrimination and request help.

98.     Plaintiff also engaged in protected activity by reporting discrimination to the office of the Ombudsman.

99.     Plaintiff's reports of discrimination fell on deaf ears and Defendant did not take action to investigate or ameliorate the ongoing illegal conduct.

100.    As a result of Defendant' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

101.    As a result of Defendant' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

102.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

103.    Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

104.    Plaintiff has further experienced severe emotional and physical distress.

105.    As Defendant' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendant, jointly and severally.

106.    Defendant have exhibited a pattern and practice of not only discrimination but also retaliation.

107.    Defendant at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

108.    Defendant discriminatory conduct was severe and pervasive, created a hostile work environment for Plaintiff.

109.    The above are just some examples, of some of the discrimination and retaliation to which Defendant subjected Plaintiff.

110.    Plaintiff claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

111.    Defendant have exhibited a pattern and practice of not only discrimination but also retaliation.

**COUNT I**
**UNDER FEDERAL LAW**
**S.C. SECTION 1981**
**(against all named Defendants)**

112.    Plaintiff hereby incorporates all allegations in the proceeding paragraphs as fully as if they were set forth at length.

113.    42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

114.    Plaintiff, as a member of the Muslim race, was discriminated against by Defendants

because of his race in violation of 42 USC Section 1981 and has suffered damages as set forth herein.

115.   Plaintiff contracted with Defendant to provide teaching services with Defendant.

116.   Plaintiff's contracted teaching services were provided in exchange for promises and guarantees provided by Defendant.

117.   Defendant violated the agreement and separated Plaintiff from his employment based on illegal, discriminatory motives.

118.   Plaintiff was subjected to disparate treatment as a result of Defendant's conduct and discriminatory objectives.

119.   Defendant violated their policies and protocols in order to end Plaintiff's employment.

120.   Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendants' unlawful employment practices.

### COUNT II
### DISCRIMINATION UNDER TITLE VII
**(against corporate Defendants only)**

121.   Plaintiff, hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

122.   This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race and religion.

123.   SEC. 2000e-2. [Section 703] states as follows:

(a) Employer practices

It shall be an unlawful employment practice for an employer -
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

124.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his race, religion, age and disability.

## COUNT III
## <u>RETALIATION UNDER TITLE VII</u>
### (against corporate Defendants only)

125.     Plaintiff, hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

126.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

127.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of his opposition to and reporting of the unlawful employment practices of Defendants.

128.     Defendants acted against Plaintiff due to Plaintiff's opposition to Defendants' discrimination and harassment of Plaintiff.

129.    Defendants also acted against Plaintiff due to Plaintiff's protected activity in reporting and opposing discrimination.

**COUNT IV**
**DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT**
**(against corporate Defendants only)**

130.    Plaintiff, hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

131.    Section 102 of the Americans with Disabilities Act ("ADA") states in relevant part as follows: (a) GENERAL RULE - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

132.    Plaintiff was capable of performing the duties with or without a reasonable accommodation.

133.    Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

134.    Plaintiff attempted to request reasonable accommodations due to Plaintiff's disability.

135.    Defendant continually, intentionally, and in a discriminatory manner refused to allow Plaintiff to work due to Plaintiff's disabled status.

136.    Defendants subjected Plaintiff to discriminatory conditions due to Plaintiff's disability.

137.    Defendants refused to engage Plaintiff in an interactive process to discuss reasonable accommodations requested.

138.    Defendants' termination of Plaintiff was not based on any medical justification and was discriminatory as to Plaintiff.

139.    Defendant terminated Plaintiff because of his disability.

140.    Such adverse employment action by Defendant were in violation of the ADA.

141.    As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

142.    Plaintiff also claims unlawful retaliation under the ADA for his opposition to Defendant's unlawful employment practice.

143.    Plaintiff makes claims for all damages available under the ADA

**COUNT V**
**RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT**
**(against corporate Defendants only)**

144.    Plaintiff, hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

145.    Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

146.    Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter IV, Section 12203, Discrimination [Section 102] states:

     a.    "(a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or

because such individual made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this chapter.

b.  (b) Interference, coercion, or intimidation. It shall be unlawful to coerce,

intimidate, threaten, or interfere with any individual in the exercise or enjoyment

of, or on account of his or her having exercised or enjoyed, or on account of his or

her having aided or encouraged any other individual in the exercise or enjoyment

of, any right granted or protected by this chapter.

147.    Defendants engaged in an unlawful discriminatory practice by retaliating against

Plaintiff due to Plaintiff's reports of discrimination and harassment in the workplace.

148.    As such, Plaintiff has been damaged as set forth herein.

**COUNT VI**
**DISCRIMINATION UNDER THE AGE**
**<u>DISCRIMINATION IN EMPLOYMENT ACT</u>**
**(against Corporate Defendants Only)**

149.    Plaintiff hereby incorporates all allegations contained in the above paragraphs as

fully as if they were set forth at length.

150.    Section 626 of the ADEA provided it shall be unlawful for an employer:

i.   to fail or refuse to hire or to discharge any individual or otherwise

discriminate against an individual with respect to their compensation,

terms, conditions or privileges of employment, because of such

individual's age;

ii.  to limit, segregate, or classify their employees in any way which would

deprive or tent to deprive any individual of employment opportunities or

otherwise adversely affect his status as an employee, because of such

individual's age; or

iii.   to reduce the wage rate of any employee in order to comply with this

chapter.

iv.   It shall be unlawful for an employment agency to fail or refuse to refer for

employment, or otherwise to discriminate against, any individual because

of such individual's age, or to classify or refer for employment any

individual on the basis of such individual's age.

151.   Defendants engaged in unlawful employment practices prohibited by Section 626

of the ADEA by discriminating against Plaintiff because of his age.

152.   Defendants' age-based comments and conduct were severe and pervasive and

occurred on a daily and/or weekly basis so that Plaintiff could not escape the discrimination and

harassment in the workplace.

153.   Accordingly, Plaintiff was subjected to a hostile work environment due to

Plaintiff's age.

154.   Defendants' conduct was severe in that Defendants engaged in acts of

discrimination and harassment sufficient to create a hostile work environment.

155.   Defendants' conduct was pervasive in that Defendants continually subjected

Plaintiff to abuse, ridicule, insults, criticism, contempt, and scorn, day after day so that Plaintiff

was forced to endure age-based discrimination and harassment in the workplace on a daily and/or

weekly basis.

156.   Defendants subjected Plaintiff to disparate treatment by terminating Plaintiff's

employment because of his age and unilaterally eliminating Plaintiff's hospital privileges.

**COUNT VII**
**RETALIATION UNDER THE AGE**
**DISCRIMINATION IN EMPLOYMENT ACT**
**(Against Corporate Defendants Only)**

157.    Plaintiff hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

      i.    Section 623 (d) of the ADEA states the following: "It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or application for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

158.    Defendants violated Section 623 (d) of the ADEA because Defendants discriminated against Plaintiff due to Plaintiff's complaints of Defendants' unlawful employment practices as previously set forth herein.

159.    Plaintiff opposed and/or reported the continual discrimination and harassment in the workplace and Defendants' conduct continued and ratcheted up.

160.    Moreover, Plaintiff was subjected to disciplinary measures such as counseling and termination after Plaintiff opposed and/or reported the discrimination and harassment in the workplace.

## COUNT VIII
## <u>DISCRIMINATION UNDER STATE LAW</u>
### (Placeholder – This Count is not ripe for suit yet)

161.    Plaintiff, hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

162.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

163.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's race, religion, age, and disability.

164.    Defendants also engaged in unlawful discriminatory conduct by discriminating against Plaintiff due to Plaintiff's disability and request for reasonable accommodations.

165.    Defendants refused to provide Plaintiff with reasonable accommodations and did not engage Plaintiff in an interactive process to discuss Plaintiff's requests.

166.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## COUNT IX
## RETALIATION UNDER STATE LAW
### (Placeholder – This Count is not ripe for suit yet)

167.     Plaintiff hereby incorporates all allegations contained in the proceeding

paragraphs as fully as if they were set forth at length.

168.     PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For

any person, employer, employment agency or labor organization to discriminate in any manner

against any individual because such individual has opposed any practice forbidden by this act, or

because such individual has made a charge, testified or assisted, in any manner, in any

investigation, proceeding or hearing under this act."

169.     Defendants engaged in an unlawful discriminatory practice by discharging,

retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to

the unlawful employment practices of Plaintiff's employer.

170.     Specifically, Defendants acted against Plaintiff due to Plaintiff's opposition to

Defendants' discrimination and harassment of Plaintiff.

171.     Defendants also acted against Plaintiff due to Plaintiff's requests for reasonable

accommodation and reports of unlawful discriminatory conduct due to Plaintiff's disability.

## COUNT X
## DISCRIMINATION UNDER STATE LAW – AIDING AND ABETTING
### (Placeholder – This Count is not ripe for suit yet)

172.     Plaintiff hereby incorporates all allegations contained in the proceeding

paragraphs as fully as if they were set forth at length.

173.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

174.    Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

175.    Defendants aided and abetting the above discrimination based on Plaintiff's race, religion, age and due to Plaintiff's disability.

**COUNT XI**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**(Placeholder – This Count is not ripe for suit yet)**

176.    Plaintiff hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

177.    The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice:  "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise

discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

178.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's disability, age, race, and religion.

179.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

180.    Plaintiff claims violations of the Philadelphia Fair Practice Ordnance due to Defendants' discrimination against Plaintiff due to Plaintiff's race, age, religion and disability.

## COUNT XII
## RETALIATION UNDER THE
## PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
### (Placeholder – This Count is not ripe for suit yet)

181.    Plaintiff, hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

182.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

183.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.


**COUNT XIII**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE – AIDING AND ABETTING**
**(Placeholder – This Count is not ripe for suit yet)**

184.    Plaintiff hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

185.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

186.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.  The individual Defendants aided and abetting the campaign of discrimination, harassment and retaliation against Plaintiff due to Plaintiff's race, religion, age and disability and in retaliation for Plaintiff opposing said discrimination and harassment in the workplace.

## JURY DEMAND

Plaintiff requests a jury trial on all issued to be tried.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an

amount to be determined at the time of trial plus interest, punitive damages, liquidated damages,

statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as

the Court deems just and proper.


**DEREK SMITH LAW GROUP, PLLC**


By:   /s/ Seth D. Carson
          Seth D. Carson, Esquire
          1835 Market Street, Suite 2950
          Philadelphia, Pennsylvania 19103
          Phone: 215.391.4790
          Email: seth@dereksmithlaw.com


DATED: February 6, 2024