## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

MBAREK SRYFI,

               Plaintiff,

v.

TRUSTEES OF THE UNIVERSITY OF
PENNSYLVANIA,  HEATHER SHARKEY,
CHRISTINA FREI,  JEFFREY KALLBERG,
AND JOSEPH LOWRY, et al.,

               Defendants.

Civil Action No. 2:23-cv-00992-JP

FIRST AMENDED COMPLAINT
JURY TRIAL DEMANDED

      Plaintiff, Mbarek Sryfi by and through his attorney, Seth D. Carson, Esquire, hereby files the following First Amended Civil Action complaint against Defendants, Trustees of the University of Pennsylvania ("Penn" or "Defendant").  Plaintiff's Charge of Discrimination also named the following individuals who aided and abetted the discriminatory conduct alleged: (1) Heather Sharkey, (2) Christina Frei, (3) Joseph Lowry, and (4) Jeffrey Kallberg.  Plaintiff's case is presented to remedy violations of the Americans with Disabilities Act, as amended, 42 U.S.C. §12102 et. seq. ("ADA"); and the Age Discrimination Employment Act ("ADEA").

      Plaintiff's Charge of Discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") and dual filed with the Pennsylvania Human Relations Commission ("PHRC"), and Philadelphia Commission on Human Relations ("PCHR").

### **PARTIES**

1.     Plaintiff, Mbarek Sryfi ("Mr. Sryfi" or "Plaintiff") is an adult male who resides in Newtown, Pennsylvania 18940.

2.     Mbarek Sryfi was born on May 21, 1961.  Accordingly, Mr. Sryfi is currently sixty-three (63) years old and at the time of the termination Mr. Sryfi was sixty-two (62) years old.

3.      Mbarek Sryfi was in a severe car accident in 2008 which resulted in the car flipping several times and hitting a tree.   The car was totaled and Mr. Sryfi was rushed to the emergency room by ambulance.

4.      The injuries from the 2008 car-wreck resulted in Mr. Sryfi suffering from a trauma related condition and permanent injury to his neck, back and left knee.

5.      From 2008 through the present, Mr. Sryfi has suffered from these permanent injuries.

6.      Mr. Sryfi's injuries were reported to Defendants and Mr. Sryfi requested requesting reasonable accommodations.

7.      Defendant, Trustees of the University of Pennsylvania ("Trustees" or "Penn" or "Defendant") is a business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of service at 255 South 36th Street, Philadelphia, PA 19104.

8.      Trustees is a public agency of the Commonwealth of Pennsylvania Department of Human Services and receives public funding including funding through Medicaid and Medicare.

9.      At all times relevant to this civil action, Heather Sharkey ("Ms. Sharkey"), was employed Penn and worked in the Department of Near Eastern Languages and Civilizations as thew Chair of the NELC Department.

10.     At all times relevant to this civil action, Christina Frei ("Ms. Frei"), was employed by Penn and held the position, Executive Director of Language Instruction.

11.     At all times relevant to this civil action, Jeffrey Kallberg ("Mr. Kallberg"), was employed by Penn and held the position, Associate Dean.

12.     At all times relevant to this civil action, Trustees of the University of Pennsylvania was Plaintiff's employer.

13.     Plaintiff was employed by Penn since 2004 and from 2004 through June 2023, Plaintiff worked as a Lecturer in Foreign Languages in the Department of Near Eastern Languages and Civilizations (hereinafter "NELC"), which is part of Penn's School of Arts and Sciences ("SAS").

14.     The individuals identified above held supervisory authority over Plaintiff, Mbarek Sryfi and used that authority to subject Plaintiff to a tangible employment action by intentionally separating Plaintiff from his employment and causing Plaintiff to suffer total economic loss of his compensation including salary and benefits and other losses as more fully set forth below.

## JURISDICTION AND VENUE

15.     Jurisdiction in this Court is proper as Plaintiff's case is presented to remedy violations of the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA").

16.     This Court does have supplemental jurisdiction over any Commonwealth Law Causes of Action or causes of action under Philadelphia ordinance.

17.     Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants, worked in Philadelphia County, lives in Bucks County, and the events that gave rise to Plaintiff's claims occurred within the Eastern District of Pennsylvania jurisdiction.

18.     Sometime around March 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

19.     Plaintiff's Charge was dual filed with the PHRC and the PCHR.

20.     All of the employees and Defendants named herein were identified by name in Plaintiff's Charge of Discrimination.

21.     Plaintiff's rights under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance are ripe for this lawsuit to be filed as Plaintiff has exhausted his administrative remedies under all applicable statutes and ordinances.

22.     The EEOC issued and sent a Dismissal and Notice of Rights to Plaintiff which set forth the requirement that Plaintiff file a civil action within ninety (90) days of the Dismissal and Notice of Rights.

23.     This was commenced within ninety (90) days of the date when Plaintiff received the Dismissal and Notice of Rights.

## **MATERIAL FACTS**

24.     At all times relevant to this civil action, Plaintiff, Mbarek Sryfi, was a Lecturer in Foreign language, in the NELC department.

25.     Plaintiff taught Arabic in the NELC department from July 2004 through June 2023, when Plaintiff was officially removed from Penn's payroll and Plaintiff's benefits were discontinued.

26.     Sometime around 2020, Plaintiff, Mbarek Sryfi was assigned the position of Coordinator of the Arabic Program in the NELC department.

27.     As Coordinator, Plaintiff was referred to by the Chair of the NELC department as a supervisor of the Lecturer in Foreign Languages.

28.     For example, on May 25, 2021, the current Chair of the Department sent an email to Richard Zettler stating, "… I have consulted his immediate supervisor (Mbarek) and the other faculty that his teaching most directly affects…"

29.    Mbarek Sryfi was separated from the Coordinator position on June 17, 2022, as part of Defendants policy and strategy to terminate older LFL's in the Arabic program and replace them with significantly younger individuals.

30.    Mbarek Sryfi was replaced by an individual who was approximately seventeen (17) years younger for the Coordinator position.

31.    Mbarek Sryfi was also replaced as a Lecturer in Foreign Languages.  This individual was approximately thirty (30) years younger.

32.    Plaintiff began his employment with Penn around July 2004, as a Lecturer of Arabic in the NELC department.

33.    Plaintiff's employment continued for nearly twenty years, until Defendants separated Plaintiff from his employment in June 2023.

34.    As a Lecturer in Foreign Languages, Plaintiff reported to Penn's Philadelphia offices located at 255 South 36th Street, Philadelphia, PA 19104.

35.    During his employment, Plaintiff was praised for his performance as a Lecturer and was promoted to Coordinator of the Department in 2020.

36.    Defendants promoted Plaintiff to the Coordinator position around 2020, and held the Coordinator position until just six (6) months prior to being told that Defendants planned to end Plaintiff's employment.

37.    Plaintiff was praised for his performance and Defendants sought Plaintiff's advice and recommendations throughout his employment for Defendants.

38.    Plaintiff, Mbarek Sryfi was terminated and replaced with an employee who was significantly younger such that the circumstances of Plaintiff's termination and replacement create

an inference that Plaintiff's termination was motivated by age discrimination according to well settled Third Circuit precedent.[1]

39.     Defendant terminated Mbarek Sryfi and replaced Mr. Sryfi with a much younger person who was approximately thirty (30) years Plaintiff's junior.  Mr. Sryfi's replacement was younger than forty (40), not in Plaintiff's protected class, and sufficiently younger as to create the inference of age discrimination under the law.[2]

40.     Defendant also terminated another older employee approximately one year prior to Plaintiff's termination and replaced this older employee with an individual who was significantly younger so as to create the inference of discriminatory intent.    The other employee's name was Emad-Ahmed Rushdie who was terminated due to age just one year before Plaintiff was terminated.

41.     Emad-Ahmed Rushdie was fifty-six (56) years old at the time of the termination and he was replaced with an individual who was more than ten years his junior.

42.     Defendant replaced Emad Rushdie with a person who was significantly younger than both Emad Rushdie and Mbarek Sryfi.

---

[1] In *Brewer*, the Third Circuit stated that an ADEA plaintiff must demonstrate that he "was replaced by a sufficiently younger person to permit an inference of age discrimination." 72 F.3d at 330. This method of proof was affirmed in *O'Connor*. 517 U.S. at 313 ("[T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator [*39] of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.") The Supreme Court cleared the way for other methods of proof as well, however, holding that an ADEA plaintiff makes out a prima facie case of age discrimination with any evidence that creates an inference that the adverse employment decision was based on illegal discrimination against the plaintiff because of his age. Id. at 312. *Burtman v. Lance*, 2008 U.S. Dist. LEXIS 21278, *38-39.

[2] In *Sempier*, the court looked to the age of the individual who had taken on a substantial portion of the plaintiff's responsibilities in the immediate aftermath of his termination; that person was "well over ten years younger" than the plaintiff. This showing satisfied the fourth prong of the plaintiff's prima facie case in *Sempier*. *Id*. at 730; *accord Smith v. Page Foam Cushioned Prods. Co., Inc*., No. Civ.A. 04-07J, 2005 U.S. Dist. LEXIS 32327, 2005 WL 2176841, at *5 (W.D. Pa. Sept. 8, 2005). [*40]  *Plausky* is fifteen years Plaintiff's junior. A fifteen-year difference in age is substantial for purposes of the ADEA. *See Bennington v. Caterpillar, Inc*., 275 F.3d 654, 659 (7th Cir. 2001) (ten-year age gap presumptively substantial). Accordingly, Plaintiff has met his light burden of showing a prima facie case of age discrimination. *Burtman v. Lance*, 2008 U.S. Dist. LEXIS 21278, *39-40

43.    Defendants announced a plan to make the Arabic Program in the NELC department younger and stated that their plan required them to terminate the older LFLs including Mbarek Sryfi so that they could be replaced and so that they could end an "era that needed to end."

44.    Within one year, Emad Rushdie in June 2022 and Mbarek Sryfi in June 2023, Defendants terminated the two oldest LFLs in the Arabic program and replaced both of them with individuals who were significantly younger and significant lowered the average age of the LFLs teaching Arabic.

45.    The reasons offered by Defendant to explain the two back-to-back terminations was almost identical.   Both reasons were offered as pretext to mask the true reason for the two terminations.

46.    Defendants articulated their true intent behind the terminations of  Mbarek Sryfi and Emad Rushdie in the years prior to the terminations.   Defendants stated that there was a plan in place to make the Arabic program younger.   Defendants stated that they were looking to end the employment of Emad Rushdie.  Defendants stated that they had to terminate Mbarek Sryfi in order to complete a plan aimed at ending an era that needed to end.

47.    The same decision-makers were behind both terminations.   These decision makers included Jeffrey Kallberg, Joseph Lowery, Paul Cobb, and Christina Frei.

48.    Paul Cobb who was Chair of the NELC department at the time, stated that the objective was to hire "younger lecturers" with "more energy."

49.    Heather Sharkey and Christina Frei said that Emad Rushdie was "getting old" and that the University was looking for someone "more energetic."

50.    Plaintiff,  Mbarek Sryfi held the position of Coordinator of the Arabic Program until Plaintiff was replaced by another person who was significantly younger.

51.   Plaintiff remained employed by Defendant for nearly twenty years, from 2004 until June 30, 2023.

52.   Plaintiff's employment ended when Defendants intentionally separated Plaintiff from his employment.

53.   The separation caused Plaintiff to significant harm including economic losses and other losses.

54.   Mbarek Sryfi suffered from significant emotional and psychological harm, loss of enjoyment of life, and other nonpecuniary losses.

55.   Mbarek Sryfi was told that the reason for the separation of employment was due to Mbarek Sryfi's age.

56.   Plaintiff was told that the termination was part of a plan to end the employment of older employees and make room for younger employees.

57.   Plaintiff was told that he was part of an older generation that needed to be replaced.

58.   The words said to Plaintiff were that Plaintiff was part of an "older era that needed to end."

59.   Plaintiff was informed that the plan was to replace older employees with younger employees.  The terminology that was used to express these objectives was that they needed to "make room for new blood."

60.   These comments were made by individuals in leadership positions including Joseph Lowry and Healthy Sharkey, around June 2022, in the context of separating Plaintiff from the Coordinator of the Arabic Program position.

61.   Emad Rushdie was subjected to almost identical treatment only one year earlier than Mbarek Sryfi.

62.    Emad Rushdie held the position of Coordinator of the Arabic Program position before he was removed and replaced.

63.    Defendants separated Emad Rushdie from the Coordinator of the Arabic Program position, as a precursor to the termination which followed soon thereafter.

64.    Plaintiff, Mbarek Sryfi was also separated from the Coordinator of the Arabic Program position, as a precursor to the termination which followed soon thereafter.

65.    At the time when Plaintiff removed from Coordinator of the Arabic program he was sixty-one (61) years old.

66.    Plaintiff's replacement for the Coordinator of the Arabic Program position was seventeen (17) years younger.

67.    Plaintiff was notified that the decision to remove Plaintiff from the Coordinator position had nothing to do with performance or disciplinary issues.

68.    Throughout Plaintiff's employment for Defendants he had no performance or disciplinary issues to speak of.

69.    Defendants admitted that the decision was motivated by the objective to hire new blood.

70.    Defendants explained and Plaintiff was informed that the decision was about filling the position with someone younger.

71.    Plaintiff had never been subjected to discipline.

72.    Plaintiff was not the subject of any performance issues.

73.    Defendants removed Plaintiff from the position of Coordinator of the Arabic Program and the position was assigned to a significantly younger, female employee.

74.    Within a two year period, Defendants continued to replace older employees with younger employees.

75.    This discriminatory policy specifically impacted the NELC department and the LFLs who taught in the Arabic program.

76.    Joeseph Lowry openly spoke about the motivation to end the employment of Plaintiff as early as September 2021.

77.    Discriminatory comments about replacing older employees with younger people were made several times by people like Paul Cobb, Joseph Lowry, Heather Sharkey, and Christina Frei.

78.    Christina Frei spoke in front of witnesses, about the unlawful motivation to develop a pretextual reason for separating Plaintiff from his employment.

79.    Christina Frei said that they needed to "build a case" against Plaintiff in order to end Plaintiff's employment.

80.    Plaintiff was subjected to discrimination because of his age and disability which led to Plaintiff being subjected to adverse employment actions including but not limited to removal from the Coordinator position and then termination one year later.  Plaintiff was told only six months after the Coordinator position was taken that the termination was eminent.

81.    In the year prior to his termination, Defendants treated Mbarek Sryfi differently than Mr. Sryfi had been treated in the other seventeen years of his employment.

82.    Defendants began sending emails in order to follow the advice of Christina Frei and to "build a case against" Mbarek Sryfi.

83.    Plaintiff was subjected to disparaging conduct and comments in his final year of employment between June 2022 and June 2023.

84.     Plaintiff had an emotional and psychological breakdown sometime around January 2023, within weeks of being told that his termination was eminent and that Plaintiff would no longer have a job after June 2023.

85.     Plaintiff stated a desire to continue his employment and implored Defendants not to terminate because of these reasons.   Defendants told Plaintiff that the decision was already made.

86.     Defendant refused to allow Plaintiff to continue his employment after June 2023.

87.     On December 16, 2023, Defendant notified Plaintiff that the separation was coming and there was nothing Plaintiff could do to stop it.

88.     Defendant informed Plaintiff that his final semester teaching would be the Spring Semester, 2023.

89.     Plaintiff's final semester would have started in January 2023.

90.     Plaintiff was scheduled to begin his final semester in January 2023, however, Plaintiff suffered significant and severe emotional distress caused by Defendant's discriminatory and disparate treatment.

91.     After almost twenty (20) years of hard work and dedication, Defendants informed Plaintiff that his final semester was about to begin, and that there was nothing Plaintiff could do or say to change the decision.

92.     Plaintiff was informed that the decision was based on something Plaintiff had no control over – his membership in a protected class.

93.      Plaintiff's age, disability was the reason for Plaintiff's termination.

94.     Plaintiff suffered severe mental anguish, loss of enjoyment of life, loss of appetite, loss of sleep, and other issues related to the emotional distress caused by the illegal conduct and decisions.

95.     In December 2022, Plaintiff sought medical treatment because of the metal anguish and emotional distress.

96.     Plaintiff was temporarily disabled by his primary care physician and Plaintiff was unable to begin work in January 2023, due to his medical condition and the recommendation of treating medical providers.

97.     Plaintiff informed Defendant and decision makers in the NELC department about Plaintiff's emotional distress, and the cause for needing medical treatment.

98.     Plaintiff engaged in protected activity to report and oppose the discriminatory comments directed at Plaintiff.

99.     Plaintiff was subjected to severe and pervasive harassment due to Plaintiff's membership in the above referenced protected classes and the hostile work environment got worse after Plaintiff's engaged in protected activity.

100.    At all times relevant to this Charge, Plaintiff suffered from a disability under the Americans with Disabilities Act ("ADA").

101.    Plaintiff's disability and injuries were sustained when Plaintiff was in an auto accident sometime around 2008.

102.    Plaintiff's auto accident injuries qualify as a disability under the ADA because Plaintiff's injuries significantly impact major life activities, including, sleeping, eating, exercising, cleaning, and other activities of daily living.

103.   At all times relevant to this civil action, Defendants had actual notice of Plaintiff's disabilities because Plaintiff informed Defendants of his medical condition and requested assistance which was denied.

104.   One of the stated reasons for the denial was that Plaintiff was "just a lecturer" and that if Plaintiff was "actual faculty" he might have had a chance.

105.   Plaintiff informed Defendant, and decision makers in the NELC department that Plaintiff suffered injuries in an auto accident.

106.   Plaintiff requested reasonable accommodations due to his disabilities under the Americans with Disabilities Act.

107.   Defendant subjected Plaintiff to a campaign of discrimination and harassment in the workplace due to Plaintiff's disability.

108.   Plaintiff engaged in protected activity by reporting the discrimination and harassment in the workplace.

109.   Plaintiff's reports of discrimination and harassment in the workplace resulted in the discrimination and harassment getting worse.

110.   Instead of helping Plaintiff and initiating an investigation aimed toward eliminating the discrimination and harassment in the workplace, Defendants ignored Plaintiff's reports and refused to initiate corrective action.

111.   Defendant instead permitted the discrimination and harassment to continue and get worse.

112.   Plaintiff reported the discrimination and harassment in the workplace to  Dean Jeffrey Kallberg and Plaintiff met with Dean Kallberg in person in order to report the discrimination and request help.

113.    Plaintiff also engaged in protected activity by reporting discrimination to the office of the Ombudsman.

114.    Plaintiff's reports of discrimination fell on deaf ears and Defendant did not take action to investigate or ameliorate the ongoing illegal conduct.

115.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

116.    As a result of Defendant' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

117.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

118.    Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

119.    Plaintiff has further experienced severe emotional and physical distress.

120.    As Defendant' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendant, jointly and severally.

121.    Defendant have exhibited a pattern and practice of not only discrimination but also retaliation.

122.    Defendant at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

123.    Defendant discriminatory conduct was severe and pervasive, created a hostile work environment for Plaintiff.

124.    The above are just some examples of some of the discrimination and retaliation to which Defendant subjected Plaintiff.

125.    Plaintiff claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

126.    Defendant have exhibited a pattern and practice of not only discrimination but also retaliation.

## COUNT I
## <u>DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT</u>
### (against corporate Defendants only)

127.    Plaintiff hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

128.    Section 102 of the Americans with Disabilities Act ("ADA") states in relevant part as follows: (a) GENERAL RULE - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

129.    Plaintiff was capable of performing the duties with or without a reasonable accommodation.

130.    Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

131.    Plaintiff attempted to request reasonable accommodations due to Plaintiff's disability.

132.    Defendant continually, intentionally, and in a discriminatory manner refused to allow Plaintiff to work due to Plaintiff's disabled status.

133.    Defendants subjected Plaintiff to discriminatory conditions due to Plaintiff's disability.

134.    Defendants refused to engage Plaintiff in an interactive process to discuss reasonable accommodations requested.

135.    Defendants' termination of Plaintiff was not based on any medical justification and was discriminatory as to Plaintiff.

136.    Defendant terminated Plaintiff because of his disability.

137.    Such adverse employment action by Defendant were in violation of the ADA.

138.    As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

139.    Plaintiff also claims unlawful retaliation under the ADA for his opposition to Defendant's unlawful employment practice.

140.    Plaintiff makes claims for all damages available under the ADA

**COUNT II**
**RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT**
**(against corporate Defendants only)**

141.    Plaintiff hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

142.    Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

143.    Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter

IV, Section 12203, Discrimination [Section 102] states:

   a.  "(a) Retaliation. No person shall discriminate against any individual because such

       individual has opposed any act or practice made unlawful by this chapter or

       because such individual made a charge, testified, assisted, or participated in any

       manner in an investigation, proceeding, or hearing under this chapter.

   b.  (b) Interference, coercion, or intimidation. It shall be unlawful to coerce,

       intimidate, threaten, or interfere with any individual in the exercise or enjoyment

       of, or on account of his or her having exercised or enjoyed, or on account of his or

       her having aided or encouraged any other individual in the exercise or enjoyment

       of, any right granted or protected by this chapter.

144.    Defendants engaged in an unlawful discriminatory practice by retaliating against

       Plaintiff due to Plaintiff's reports of discrimination and harassment in the workplace.

145.    As such, Plaintiff has been damaged as set forth herein.

## COUNT III
## DISCRIMINATION UNDER THE AGE
## <u>DISCRIMINATION IN EMPLOYMENT ACT</u>
### (against Corporate Defendants Only)

146.    Plaintiff hereby incorporates all allegations contained in the above paragraphs as

fully as if they were set forth at length.

147.    Section 626 of the ADEA provided it shall be unlawful for an employer:

   i.   to fail or refuse to hire or to discharge any individual or otherwise
        discriminate against an individual with respect to their compensation,
        terms, conditions or privileges of employment, because of such
        individual's age;

   ii.  to limit, segregate, or classify their employees in any way which would
        deprive or tent to deprive any individual of employment opportunities or

otherwise adversely affect his status as an employee, because of such individual's age; or

iii.   to reduce the wage rate of any employee in order to comply with this chapter.

iv.   It shall be unlawful for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of such individual's age, or to classify or refer for employment any individual on the basis of such individual's age.

148.    Defendants engaged in unlawful employment practices prohibited by Section 626 of the ADEA by discriminating against Plaintiff because of his age.

149.    Defendants' age-based comments and conduct were severe and pervasive and occurred on a daily and/or weekly basis so that Plaintiff could not escape the discrimination and harassment in the workplace.

150.    Accordingly, Plaintiff was subjected to a hostile work environment due to Plaintiff's age.

151.    Defendants' conduct was severe in that Defendants engaged in acts of discrimination and harassment sufficient to create a hostile work environment.

152.    Defendants' conduct was pervasive in that Defendants continually subjected Plaintiff to abuse, ridicule, insults, criticism, contempt, and scorn, day after day so that Plaintiff was forced to endure age-based discrimination and harassment in the workplace on a daily and/or weekly basis.

153.    Defendants subjected Plaintiff to disparate treatment by terminating Plaintiff's employment because of his age and unilaterally eliminating Plaintiff's hospital privileges.

**COUNT IV**
**RETALIATION UNDER THE AGE**
**DISCRIMINATION IN EMPLOYMENT ACT**
**(Against Corporate Defendants Only)**

154.    Plaintiff hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

      i.  Section 623 (d) of the ADEA states the following: "It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or application for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

155.    Defendants violated Section 623 (d) of the ADEA because Defendants discriminated against Plaintiff due to Plaintiff's complaints of Defendants' unlawful employment practices as previously set forth herein.

156.    Plaintiff opposed and/or reported the continual discrimination and harassment in the workplace and Defendants' conduct continued and ratcheted up.

157.    Moreover, Plaintiff was subjected to disciplinary measures such as counseling and termination after Plaintiff opposed and/or reported the discrimination and harassment in the workplace.

**COUNT V**
**DISCRIMINATION UNDER STATE LAW**
**PLAINTIFF V. TRUSTEES OF UNIVERSITY OF PENNSYLVANIA**

158.    Plaintiff hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

159.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

"(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national

origin or non-job related handicap or disability or the use of a guide or support animal because of

the blindness, deafness or physical handicap of any individual or independent contractor, to

refuse to hire or employ or contract with, or to bar or to discharge from employment such

individual or independent contractor, or to otherwise discriminate against such individual or

independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges

of employment or contract, if the individual or independent contractor is the best able and most

competent to perform the services required."

160.    Defendants engaged in an unlawful discriminatory practice by discriminating

against the Plaintiff because of Plaintiff's age and disability.

161.    Defendants also engaged in unlawful discriminatory conduct by discriminating

against Plaintiff due to Plaintiff's disability and request for reasonable accommodations.

162.    Defendants refused to provide Plaintiff with reasonable accommodations and did

not engage Plaintiff in an interactive process to discuss Plaintiff's requests.

163.    Plaintiff hereby makes a claim against Defendants under all of the applicable

paragraphs of the PHRA § 955.

## COUNT VI
## RETALIATION UNDER STATE LAW
## PLAINTIFF V. ALL DEFENDANTS

164.    Plaintiff hereby incorporates all allegations contained in the proceeding

paragraphs as fully as if they were set forth at length.

165.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For

any person, employer, employment agency or labor organization to discriminate in any manner

against any individual because such individual has opposed any practice forbidden by this act, or

because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

166.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

167.    Specifically, Defendants acted against Plaintiff due to Plaintiff's opposition to Defendants' discrimination and harassment of Plaintiff.

168.    Defendants also acted against Plaintiff due to Plaintiff's requests for reasonable accommodation and reports of unlawful discriminatory conduct due to Plaintiff's disability.

**COUNT VII**
**DISCRIMINATION UNDER STATE LAW**
**AIDING AND ABETTING**
**PLAINTIFF V. THE INDIVIDUAL DEFENDANTS ONLY**

169.    Plaintiff hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

170.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

171.    Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

172.    Defendants aided and abetting the above discrimination based on Plaintiff's race, religion, age and due to Plaintiff's disability.

**COUNT VIII**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**<u>PLAINTIFF V. TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA</u>**

173.    Plaintiff hereby incorporates all allegations contained in the proceeding paragraphs as fully as if they were set forth at length.

174.    The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

175.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's age and disability.

176.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

177.    Plaintiff claims violations of the Philadelphia Fair Practice Ordnance due to

Defendants' discrimination against Plaintiff due to Plaintiff's race, age, religion and disability.

**COUNT IX**
**RETALIATION UNDER THE**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**PLAINTIFF V. ALL DEFENDANTS**

178.    Plaintiff hereby incorporates all allegations contained in the proceeding

paragraphs as fully as if they were set forth at length.

179.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be

unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or

otherwise penalize, retaliate or discriminate in any manner against any person because he, she or

it has complied with the provisions of this Chapter, exercised his, her or its rights under this

Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any

manner in any investigation, proceeding or hearing hereunder."

180.    Defendants engaged in an unlawful discriminatory practice in violation of

Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff

because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**COUNT X**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**AIDING AND ABETTING**
**PLAINTIFF V. THE INDIVIDUAL DEFENDANTS ONLY**

181.    Plaintiff hereby incorporates all allegations contained in the proceeding

paragraphs as fully as if they were set forth at length.

182.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be

unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce

the doing of any unlawful employment practice or to obstruct or prevent any person from

complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

183.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.  The individual Defendants aided and abetting the campaign of discrimination, harassment and retaliation against Plaintiff due to Plaintiff's age and disability and in retaliation for Plaintiff opposing said discrimination and harassment in the workplace.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issued to be tried.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

By:    _/s/ Seth D. Carson_____
       Seth D. Carson, Esquire
       1835 Market Street, Suite 2950
       Philadelphia, Pennsylvania 19103
       Phone: 215.391.4790
       Email: seth@dereksmithlaw.com

DATED: September 11, 2024