IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MBAREK SRYFI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRUSTEES OF THE UNIVERSITY OF | : | |
| PENNSYLVANIA, ET AL. | : | NO.  24-567 |

## MEMORANDUM

**Padova, J.**                                                              **February 24, 2025**

In 2023, Plaintiff Mbarek Sryfi was fired from his job of almost 20 years as an Arabic language lecturer at the University of Pennsylvania ("Penn").  Plaintiff brought suit against Penn and four university administrators, asserting claims of disability discrimination, age discrimination, retaliation, hostile work environment, and aiding and abetting, in violation of federal, state, and local anti-discrimination laws.  Defendant has moved to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons that follow, we grant the Motion in part and deny it in part.

## I.    BACKGROUND

The Amended Complaint alleges the following facts.  Plaintiff was employed as a lecturer teaching Arabic in the Department of Near Eastern Languages and Civilizations ("NELC") at Penn from July 2004 through June 2023.  (Am. Compl. ¶¶ 13, 25.)  He was praised for his performance as a lecturer and ultimately promoted to Arabic Program Coordinator.  (Id. ¶¶ 26, 35.)

In 2008, Plaintiff was involved in a serious car accident when his car flipped several times and struck a tree.  (Id. ¶ 3.)  He was rushed to the emergency room and suffered a trauma-related condition, as well as permanent injuries to his neck, back, and knee.  (Id. ¶¶ 3-5.)  These injuries

significantly impacted everyday activities such as sleeping, eating, exercising, and cleaning.  (Id. ¶ 102.)  Plaintiff notified Penn about his injuries and requested reasonable accommodations, but Penn refused because Plaintiff was "just a lecturer" and not "actual faculty."  (Id. ¶¶ 6, 104.)

On June 17, 2022, when Plaintiff was 61 years old, he was removed from the coordinator position and replaced by an individual seventeen years younger.  (Id. ¶¶ 29-30, 65.)  Plaintiff had not had any performance or disciplinary issues during his employment and was told that the decision to remove him had nothing to do with such issues.  (Id. ¶¶ 67-68, 71-72.)  Around the same time, Penn terminated the employment of Plaintiff's 56-year-old colleague Emad-Ahmed Rushdie, the former Arabic Program Coordinator, replacing him with an individual more than ten years younger.  (Id. ¶¶ 40-41, 62-63.)  Plaintiff also began to experience disparaging conduct and comments during this time.  (Id. ¶ 83.)

On December 16, 2022, Plaintiff was notified that he would be terminated from his lecturer position in June 2023, the end of the following semester.  (Id. ¶¶ 84, 87.)  Plaintiff implored Defendants not to terminate him but was told that the decision had already been made.  (Id. ¶ 85.)  This caused Plaintiff severe emotional distress, which required medical treatment and prevented Plaintiff from beginning his final semester of teaching in January 2023.  (Id. ¶¶ 90, 94.)  Plaintiff informed Defendants about his distress and the resulting need for medical treatment.  (Id. ¶ 97.)  Nonetheless, in June 2023, Plaintiff, then age 62, was terminated from his position as a lecturer and replaced by an individual thirty years younger.  (Id. ¶¶ 2, 31, 33.)

Rushdie and Plaintiff were the two oldest lecturers in the Arabic Program, and Defendants offered nearly identical pretextual reasons for their terminations.  (Id. ¶¶ 44-45.)  In years prior, however, Defendants had articulated the true reason for the firings: a plan to make the Arabic

2

Program younger by terminating Rushdie and Plaintiff and "ending an era that needed to end." (Id. ¶ 46.)

The decisionmakers behind the terminations included Defendants Associate Dean Jeffrey Kallberg, Joseph Lowry,[1] and Executive Director of Language Instruction Christina Frei, as well as NELC Department Chair Paul Cobb, who is not a defendant to this action.  (Id. ¶¶ 10, 11, 47, 48.)  Prior to Plaintiff's termination, Defendant Frei spoke about the need to "build a case" against Plaintiff, and Defendants began sending emails to that end.  (Id. ¶¶ 79, 82.)  In September 2021, Defendant Lowry spoke openly about the motivation to fire Plaintiff in order to replace him with someone younger.  (Id. ¶¶ 70, 76.)  Cobb stated that their objective was to hire "younger lecturers" with "more energy."  (Id. ¶ 48.)  Defendants Frei and Heather Sharkey, also a NELC Department Chair, said that Rushdie was "getting old" and that Penn was looking for someone "more energetic."  (Id. ¶¶ 9, 49.)  In the context of Plaintiff's separation from the coordinator position, Plaintiff was told that the reason for his removal was his age, and that it was part of a plan to end the employment of older employees to "make room for new blood."  (Id. ¶¶ 55-56, 59-60, 69-70.)  Plaintiff was told that he was part of an "older era that needed to end."  (Id. ¶¶ 57-58.)  These comments were made by individuals in leadership positions including Defendants Lowry and Sharkey.  (Id. ¶ 60.)  Discriminatory comments about replacing older employees with younger people were also made several times by people like Defendants Lowry, Sharkey, and Frei, as well as Cobb.  (Id. ¶ 77.)

Plaintiff met with Defendant Kallberg in person to report the discrimination and request help.  (Id. ¶ 112.)  He also reported discrimination to Penn's Office of the Ombudsman.  (Id. ¶ 113.)  Nevertheless, Defendants took no action to investigate or ameliorate the mistreatment.  (Id.

---

[1] The Amended Complaint does not allege Lowry's position at Penn.

¶ 114.)  As a result of Defendants' conduct, Plaintiff suffered humiliation and emotional distress, as well as loss of salary, bonuses and other compensation.  (Id. ¶¶ 115-19.)

On February 7, 2024, Plaintiff filed a Complaint in this Court, which Defendant answered. Following a preliminary conference, Plaintiff was permitted to amend his Complaint to clarify his claims.  Plaintiff filed an Amended Complaint on September 12, 2024.  The Amended Complaint asserts ten claims.  Counts I, V, and VIII assert claims of disability discrimination against Penn under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. § 951 et seq.; and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code § 9-1100 et seq.   Counts III, V, and VIII assert age discrimination claims against Penn under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; the PHRA; and the PFPO.  Counts II, IV, VI, and IX assert retaliation claims against Penn under the ADA and the ADEA, and against all Defendants under the PHRA and the PFPO.  Counts VII and X assert claims of aiding and abetting discrimination against the individual Defendants under the PHRA and the PFPO.[2]  Presently before the Court is Defendants' Motion to Dismiss the Amended Complaint in its entirety pursuant to Rule 12(b)(6).  Plaintiff opposes the Motion.

## II.    LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as

---

[2] In the original Complaint, Plaintiff also appeared to be asserting claims of discrimination based on race, national origin, and/or religion.  Plaintiff does not contest Defendants' assertion in their Motion that he has abandoned those claims.  Indeed, Plaintiff expressly states that he "removed claims for national origin and race discrimination" from the Amended Complaint (Pl. Resp. at 9 of 14), which retains only two isolated, apparently vestigial references to such claims. (See Am. Compl. ¶¶ 172, 177.)  Accordingly, we conclude that Plaintiff is no longer asserting claims of discrimination based on race, religion, or national origin in the Amended Complaint.

undisputedly authentic documents if the complainant's claims are based upon these documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). We "accept as true all plausible factual allegations made in the complaint and draw all reasonable inferences in the plaintiff's favor." In re Asbestos Prod. Liab. Litig. (No. VI), 822 F.3d 125, 133 (3d Cir. 2016) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Williams v. BASF Catalysts LLC, 765 F.3d 306, 323 (3d Cir. 2014)). However, we "need not 'accept as true a legal conclusion couched as a factual allegation.'" Host Int'l, Inc. v. Marketplace PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (citation omitted).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

### III.    DISCUSSION

As noted above, the Amended Complaint asserts claims of disability discrimination, age discrimination, retaliation, hostile work environment, and aiding and abetting pursuant to the ADA, ADEA, PHRA, and PFPO.  Courts have generally interpreted analogous claims under these statutes coextensively.  See Denham v. Children's Hosp. of Phila., Civ. A. No. 19-0794, 2020 WL 3829228, at *3 (E.D. Pa. July 8, 2020) ("Employment discrimination claims brought under the PHRA and PFPO are reviewed under a comparable legal framework as found in the ADA and ADEA." (citing Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999); Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999))); Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (explaining that "[Pennsylvania] courts . . . generally interpret the PHRA in accord with its federal counterparts" including "parallel provisions in . . . the ADA, or the ADEA" (citing Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir. 1995); Chmill v. City of Pittsburgh, 412 A.2d 860, 871 (Pa. 1980))).

Where, as here, a plaintiff relies on indirect evidence of discrimination or retaliation, the McDonnell Douglas burden-shifting framework applies.  See Higgins v. MetLife Inc., 687 F. Supp. 3d 644, 649 (E.D. Pa. 2023) (collecting cases); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-06 (1973).  Under that framework, the initial burden is on the plaintiff to make out a prima facie case of his claim.  McDonnell Douglas, 411 U.S. at 802.  While the plaintiff need not allege all the facts necessary to prove his prima facie case at the pleading stage, in order to state a cognizable claim, "[t]he complaint [must] allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021) (third alteration in original) (quoting Fowler, 578 F.3d at 213).

### A.  Disability Discrimination

In Counts I, V, and VIII, Plaintiff asserts that Penn discriminated against him on the basis of disability in violation of the ADA, PHRA, and PFPO.  Each of these statutes prohibits employers "from discriminating on the basis of disability with regard to job applications, hiring, advancement, or firing."  Ahern v. EResearch Tech., Inc., 183 F. Supp. 3d 663, 668 (E.D. Pa. 2016) (citing 42 U.S.C. § 12112(a); 43 Pa. Stat. § 955(a); Phila. Code. § 9-1103(1)).  To make out a prima facie case of disability discrimination, a complaint must allege: "(1) that [the plaintiff] is disabled within the meaning of the [statute], (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination."  Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010) (citation omitted); see also Williams v. Phila. Housing Auth. Police Dep't, 380 F.3d 751, 761 n.6 (3d Cir. 2004) ("An 'analysis of an ADA claim applies equally to a PHRA claim.'" (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999))); Bowdren v. Cristo Rey Phila. High Sch., Civ. A. No. 22-4716, 2023 WL 3362580, at *4 (E.D. Pa. May 10, 2023) (explaining that claims of disability discrimination under the PFPO and the ADA are "subject to the same analysis" (citations omitted)).  Defendants argue that Plaintiff's disability discrimination claims must be dismissed because the Amended Complaint fails to plausibly allege any of these elements.

#### 1.  Disabled

The first element of a prima facie case of disability discrimination requires the plaintiff to show that he is "disabled within the meaning of the [statute]."  Sulima, 602 F.3d at 185 (citation omitted).  The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  Here, Plaintiff's alleged

disability stems from a 2008 car accident in which he suffered "a trauma related condition and permanent injury to his neck, back and left knee." (Am. Compl. ¶¶ 3-5, 101.)  The Amended Complaint alleges that these injuries have had an ongoing and significant impact on major life activities of Plaintiff including sleeping, eating, exercise, and cleaning.  (Id. ¶¶ 5, 102.)  While these allegations do not fully flesh out the nature of Plaintiff's injuries, they do describe the basic character, permanency, and impact of those injuries.  This is sufficient to "raise a reasonable expectation that discovery will reveal evidence" that Plaintiff was disabled within the meaning of the ADA and related statutes.  Martinez, 986 F.3d at 266 (quoting Fowler, 578 F.3d at 213); see also Fowler, 578 F.3d at 213 ("[The plaintiff] is not required, at this early pleading stage, to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations.").  We therefore conclude that the Amended Complaint adequately pleads the first element of Plaintiff's disability discrimination claims.

### 2.   Qualified

The second element of Plaintiff's prima facie case requires him to show that, notwithstanding his disability, he is "otherwise qualified for [his] job, with or without reasonable accommodations."  Sulima, 602 F.3d at 185 (citation omitted).  The Amended Complaint alleges that Plaintiff was employed by Penn as a lecturer for approximately nineteen years, including fifteen years following the 2008 car accident in which he was disabled.  (See Am. Compl. ¶¶ 25, 101.)  It alleges that in all this time, Plaintiff had no performance or disciplinary issues, and indeed was praised and promoted to Arabic Program Coordinator in 2020.  (Id. ¶¶ 26, 35, 68.)  These allegations support a reasonable inference that Plaintiff was qualified for his roles at Penn even after becoming disabled.  Cf. Franckowiak v. Conagra Foods, Inc., Civ. A. No. 16-4480, 2017 WL 2672668, at *12 (E.D. Pa. June 21, 2017) ("[The Plaintiff's] long tenure as maintenance manager

and competent performance ratings are sufficient to establish that he was qualified for the position." (citation omitted)); <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 330 (3d Cir. 1995) (concluding that employee was "qualified for the position of sales representative" because he "worked as a Quaker State sales representative for twenty-three years" and "received overall evaluations that translated into 'competent'"); <u>Lynch v. Ridgeway Area Sch. Dist.</u>, Civ. A. No. 15-218, 2016 WL 11668917, at *2 (W.D. Pa. Jan. 22, 2016) (concluding that allegations that employee "had been employed by the school district for over twenty-five years and had always received favorable performance reviews," suffice at the motion to dismiss stage).

Defendant cites <u>Drummer v. Trustees of University of Pennsylvania</u> for the proposition that "the mere fact that [the plaintiff] was employed by Defendant up until the time of his termination does not by itself establish that he remained qualified for his job." 286 F. Supp. 3d 674, 683 (E.D. Pa. 2017) (citation omitted). However, the plaintiff in <u>Drummer</u> had only been employed by the defendant "in 2014 and 2015" and had been placed on a performance improvement plan during that time. <u>Id.</u> at 677-678. Here, in contrast, the Amended Complaint alleges a lengthy period of employment both before and after the alleged disability, unmarred by performance or disciplinary issues. Thus, we conclude that the Amended Complaint adequately pleads the second element of Plaintiff's disability discrimination claims.

### 3. Causation

The final element of a prima facie case of disability discrimination requires the plaintiff to show that he "was subjected to an adverse employment decision as a result of discrimination." <u>Sulima</u>, 602 F.3d at 185 (citation omitted). An adverse employment decision, or adverse employment action, is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." <u>Cunningham v. Nordisk</u>, 615 F.

App'x 97, 100 (3d Cir. 2015) (quoting <u>Storey v. Burns Int'l Sec. Servs.</u>, 390 F.3d 760, 764 (3d Cir. 2004)). While termination is a "quintessential" adverse employment decision, <u>Dove v. Cmty. Educ. Ctrs. Inc.</u>, Civ. A. No. 12-4384, 2012 WL 5403508, at *4 (E.D. Pa. Nov. 5, 2012), an employer's refusal to make reasonable accommodations may also satisfy this standard.  <u>See</u> <u>Thomas v. Trustees of Univ. of Pennsylvania</u>, Civ. A. No. 17-5194, 2020 WL 374615, at *8 (E.D. Pa. Jan. 23, 2020) (quoting <u>Aubrey v. City of Bethlehem, Fire Dept.</u>, 466 F. App'x 88, 93 (3d Cir. 2012)).

Here, the Amended Complaint alleges that Plaintiff was removed from his coordinator role in 2022 and terminated from his lecturer position in 2023.  (<u>See</u> Am. Compl. ¶¶ 29, 33.)  Defendant does not gainsay that either of these were adverse employment actions.  Nonetheless, the Amended Complaint does not allege facts that would show that these actions had anything to do with Plaintiff's disability.  Indeed, the onset of the disability and the adverse actions occurred well over a decade apart.  (<u>Id.</u> ¶¶ 29, 33, 101.)  The Amended Complaint alleges that, at some point, Plaintiff informed "Defendant" and "decision makers in the NELC Department" about his disability, but it does not specify who was informed or when.  (Am. Compl. ¶ 105.)  Moreover, even if the decisionmakers behind Plaintiff's removal from the coordinator position and termination were aware of his disability, "mere awareness of a disability does not create an inference of discrimination." <u>Drummer</u>, 286 F. Supp. 3d at 683 (citing <u>Kelly</u>, 94 F.3d at 109).  The Amended Complaint does not allege that anyone at Penn made reference to Plaintiff's disability at any time or that any other disabled individual was discriminated against, nor does it allege other facts that would support a reasonable inference that Plaintiff's disability and his loss of the coordinator and lecturer jobs were connected.  Accordingly, we conclude that the Amended Complaint does not

allege facts that raise a reasonable inference that either of these employment actions were based on Plaintiff's disability.

As noted, an employer's failure to reasonably accommodate a disabled employee may also constitute an adverse employment action. See Thomas, 2020 WL 374615, at *8 (quotation omitted). Here, however, the Amended Complaint contains no more than conclusory allegations that Plaintiff requested "reasonable accommodations" and was "denied." (Am. Compl. ¶¶ 6, 103, 106.) There are no allegations as to any specific accommodations Plaintiff requested, when he made such requests, or to whom. These bald allegations do not suffice to plausibly allege that Defendant failed to reasonably accommodate Plaintiff's disability.

Because the Amended Complaint does not allege facts sufficient to "raise a reasonable expectation that discovery will reveal evidence" that Plaintiff suffered an adverse action because of his disability, it fails to state a claim for disability discrimination under the ADA, the PHRA, or the PFPO. Martinez, 986 F.3d at 266 (quoting Fowler, 578 F.3d at 213). Accordingly, the Motion to Dismiss is granted with respect to Plaintiff's disability discrimination claims in Counts I, V, and VIII.

## B. Age Discrimination

In Counts III, V, and VIII, Plaintiff asserts that Penn discriminated against him on the basis of age in violation of the ADEA, PHRA, and PFPO. The ADEA, PHRA, and PFPO each prohibit employers from discriminating on the basis of age with regard to job applications, hiring, advancement, or firing. See 29 U.S.C. § 623(a); 43 Pa. Stat. § 955(a); Phila. Code. § 9-1103(1)). To state a prima facie case of age discrimination under any of these statutes, a plaintiff must allege that "(1) [he] is at least forty years old; (2) [he] suffered an adverse employment decision; (3) [he] was qualified for the position in question; and (4) the adverse action occurred under circumstances

that create an inference that [his] age was a motivating factor," including "replace[ment] by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." Dodson v. Coatesville Hosp. Corp., 773 F. App'x 78, 80 & n.3 (3d Cir. 2019) (quotations and citations omitted); Wolf v. Temple Univ., Civ. A. No. 21-866, 2022 WL 1084743, at *3 (E.D. Pa. Apr. 11, 2022) (explaining that age discrimination claims under the ADEA, PHRA, and PFPO are analyzed under the same framework (citing Kelly, 94 F.3d at 105; Joseph v. Cont'l Airlines, Inc., 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000))). As we previously concluded, the Amended Complaint plausibly alleges that Plaintiff was qualified for his roles at Penn, and it is undisputed that Plaintiff was over forty throughout the relevant period. Nor does Defendant contest that Plaintiff's removal from his coordinator role and termination from employment constituted adverse employment actions. Rather, Defendant argues that the Amended Complaint does not allege "circumstances that create an inference that [Plaintiff's] age was a motivating factor" for these actions. Dodson, 773 F. App'x at 80 (citation omitted).

The Amended Complaint alleges that when Plaintiff was terminated from his coordinator and lecturer positions, he was replaced by individuals who were, respectively, about seventeen and thirty years younger than he was. (Am. Compl. ¶¶ 30-31.) It further alleges that the second oldest lecturer in the Arabic Program after Plaintiff, Rushdie, age 56, was terminated just one year prior to Plaintiff and replaced by someone ten years younger. (Id. ¶¶ 41, 44.) Additionally, it alleges numerous age-inflected remarks by NELC leadership, including comments by Cobb that their objective was to hire "younger lecturers" with "more energy"; by Sharkey and Frei that Rushdie was "getting old" and Penn needed someone "more energetic"; and by Lowry and Sharkey that Plaintiff was being removed from the coordinator position because he was part of an "older era that needed to end" and the department needed to "make room for new blood." (Id. ¶¶ 48, 49, 55-

60.)  The Amended Complaint also alleges that Frei, Cobb, and Lowry were among the decisionmakers responsible for terminating the employment of both Plaintiff and Rushdie.  (Id. ¶ 47.)  Finally, it alleges that Plaintiff had no disciplinary or performance issues during his many years of employment at Penn and was specifically told that the decision to remove him from the coordinator position had nothing to do with such issues.  (Id. ¶¶ 67-68.)

Taken together, these allegations amply support a plausible inference that age was a motivating factor in Plaintiff's removal from the coordinator role and subsequent termination. Allegations that the plaintiff was replaced by an individual "sufficiently younger to permit an inference of age discrimination" are "one way to establish the fourth element" of a prima facie case.  Dodson, 773 F. App'x at 80 n.3 (quotation omitted); see also Martinez, 986 F.3d at 267-68 (concluding that allegations "that [the plaintiff's] replacements were 'significantly younger'" were "enough" to "plausibly plead[] age discrimination").  The alleged thirty- and seventeen-year age gaps between Plaintiff and his replacements as coordinator and lecturer permit such an inference. See Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999) (explaining that "courts have held . . . that a five year difference can be sufficient" to satisfy the "sufficiently younger" standard (alteration in original) (quoting Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995))); Martin v. Healthcare Bus. Res., Civ. A. No. 00-3244, 2002 WL 467749, at *5 n.7 (E.D. Pa. Mar. 26, 2002) ("For purposes of a prima facie ADEA case, the fourth element contemplates an age difference of at least five years.").  Moreover, the Amended Complaint includes additional "suspicious details" in support of this element, such as the allegations regarding Rushdie's similar termination, the various comments by those involved in the challenged employment actions, and Plaintiff's lack of disciplinary or performance issues that might justify those actions.  Martinez, 986 F.3d at 267.  While Defendant correctly notes that not all of these

allegations are fully detailed or inherently suspect on their face, taken together, they are enough to plausibly allege that Plaintiff's age was a motivating factor in the alleged adverse employment actions. See Shaner v. Synthes, 204 F.3d 494, 503 n.9 (3d Cir. 2000) ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario." (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997))). Accordingly, the Motion to Dismiss is denied with respect to Plaintiff's age discrimination claims in Counts III, V, and VIII.

### C. Retaliation

In Counts II and IV, Plaintiff asserts retaliation claims against Penn pursuant to the ADA and ADEA. In Counts VI and IX, he asserts retaliation claims against all Defendants pursuant to the PHRA and the PFPO. The ADA, ADEA, PHRA, and PFPO all prohibit employers from retaliating against employees because they "opposed, made a charge, testified, assisted, or participated in any investigation, proceeding or hearing regarding an unlawful discriminatory practice." Ahern, 183 F. Supp. 3d at 670 (citing 43 Pa. Stat. Ann. § 955(d); Phila. Code. § 9-1103(1)(g)) (add'l citation omitted); see also Macknet v. Univ. of Pennsylvania, 738 F. App'x 52, 56 (3d Cir. 2018) (explaining that the ADA, ADEA, and PHRA anti-retaliation provisions have been interpreted "as applying identically . . . . and [as being] governed by the same set of precedents" (alterations in original) (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 564, 567 (3d Cir. 2002))). A plaintiff can allege a prima facie case of retaliation under any of these statutes by alleging that: (1) he engaged in activity protected by the statute; (2) he suffered an adverse employment action "after or contemporaneous with" the protected activity; and (3) there is a "causal connection" between the protected activity and the adverse employment action. Macknet, 738 F. App'x at 56 (quoting Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir.

2015)).   Defendants argue that Plaintiff's retaliation claims must be dismissed because the Amended Complaint fails to plausibly allege any of these elements.

### 1. Protected Activity

The first element of a prima facie case of retaliation requires the plaintiff to allege that he engaged in protected activity, in that he "opposed, made a charge, testified, assisted, or participated in any investigation, proceeding or hearing regarding an unlawful discriminatory practice." Ahern, 183 F. Supp. 3d at 670 (citations omitted).    Protected activity must oppose an unlawful discriminatory practice, i.e. one based on a protected characteristic, and not merely generalized unfair treatment.   See Barbalace v. KenCrest Servs., Inc., Civ. A. No. 22-258, 2022 WL 1157893, at *3 (E.D. Pa. Apr. 19, 2022) (quoting Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015); Barber v. CSX Distribution Servs., 68 F.3d 694, 702 (3d Cir. 1995)).   Here, the Amended Complaint alleges that Plaintiff engaged in protected activity by "report[ing] and oppose[ing] the discriminatory comments directed at [him]" and by "reporting . . . discrimination and harassment in the workplace" that he suffered due to his disability.   (Am. Compl. ¶¶ 98, 107-108.) Specifically, it alleges that Plaintiff reported "the discrimination and harassment in the workplace" to Defendant Kallberg in a face-to-face meeting, and that he reported "discrimination" to Penn's Office of the Ombudsman.   (Id. ¶¶ 112-13.)

Defendant argues that Plaintiff does not plausibly allege that his complaints to Kallberg and the Ombudsman were about unlawful discrimination as opposed to more general grievances. However, what Plaintiff allegedly complained about was not merely unfairness or mistreatment, but "the discriminatory comments" and "the discrimination and harassment in the workplace."   (Id. ¶¶ 98, 112.)  He specifically alleges that part of what he complained about was "discrimination and harassment . . . due to [his] disability."  (Id. ¶¶ 107-08.)  It is also reasonable to infer that "the

discriminatory comments" and "the discrimination and harassment" included the incidents of age discrimination alleged elsewhere in the Amended Complaint, particularly when viewed in the light most favorable to the Plaintiff. Accordingly, we conclude that the Amended Complaint plausibly alleges that Plaintiff engaged in protected activity when he met with Defendant Kallberg and the Ombudsman, thereby satisfying his pleading obligation with respect to the first element of his retaliation claims.

### 2. Adverse Action

To satisfy the second element of a prima facie case of retaliation, the plaintiff must allege that he suffered an adverse action "after or contemporaneous with" his protected activity. Macknet, 738 F. App'x at 56 (quotation omitted). In the retaliation context, an adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quotation omitted).

Here, we understand the Amended Complaint to allege that Plaintiff suffered retaliatory adverse actions both insofar as he was removed from the coordinator position and insofar as his employment as a lecturer was terminated.[3] Defendants do not dispute that these actions could constitute adverse actions for purposes of a retaliation claim. Nonetheless, there are no allegations

---

[3] The allegations of the Amended Complaint also suggest that after Plaintiff engaged in protected activity, "the hostile work environment" and "the discrimination and harassment" worsened. (Am. Compl. ¶¶ 99, 109.) However, Plaintiff does not argue in his brief in opposition to the Motion to Dismiss that a worsening work environment, discrimination, and harassment were additional adverse actions in retaliation for his protected activity. Nor does the Amended Complaint provide any additional details about the timing of the alleged protected activity and worsening treatment, the nature of the protected activity involved, or the contours and extent of the worsening treatment. Accordingly, we can only conclude that Plaintiff is not pursuing a claim that the worsening work environment, discrimination, and harassment were themselves adverse actions in retaliation for protected activity.

that would show that either Plaintiff's removal from the coordinator position or his termination occurred "after or contemporaneous with" his protected activity.  Macknet, 738 F. App'x at 56 (quotation omitted).  Indeed, there are *no* allegations as to when Plaintiff's protected activity occurred, much less when it occurred vis-à-vis these two alleged adverse actions.  We therefore conclude that the Amended Complaint does not plausibly allege the second element of a retaliation claim, i.e. that Plaintiff suffered an adverse action "after or contemporaneous with" his protected activity.  Macknet, 738 F. App'x at 56 (quotation omitted).  Because this aspect of Plaintiff's claims is also closely related to causation, we proceed to analyze that element as well.

### 3.  Causal Connection

The third element of a prima facie case of retaliation requires the plaintiff to allege a "causal connection" between his protected activity and an adverse employment action.  Macknet, 738 F. App'x at 56 (quotation omitted).  An adverse employment action may be causally linked to an employee's protected activity by a "broad array of evidence," such as inconsistent explanations for the action, a pattern of antagonism following the protected activity, or temporal proximity between the protected activity and the action.  See Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 260 (3d Cir. 2017) (citations omitted) (quoting Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007)).

As noted above, the Amended Complaint contains no allegations as to the timing of Plaintiff's protected activity.  Thus, there are no allegations that would show either temporal proximity between the protected activity and adverse actions, or a pattern of antagonism following the protected activity.  Additionally, there are no allegations that Defendants offered inconsistent explanations for the terminations suggesting retaliatory intent.  On the contrary, the Amended Complaint repeatedly alleges that Defendants communicated that they stripped Plaintiff of his

coordinator role and terminated him because of his age.  (See Am. Compl. ¶¶ 43, 48, 55-60, 92-93.)  And while the Amended Complaint does baldly allege that Defendants offered pretextual reasons for their termination of Plaintiff and Rushdie, in the absence of further allegations about those pretextual reasons, the mere assertion that they existed does not give rise to a reasonable inference of improper retaliatory motive.  (Id. ¶ 45.)

Because the Amended Complaint does not allege facts that would show that Plaintiff's protected activity preceded the alleged adverse actions, let alone that the two were causally connected, we cannot conclude that it "raise[s] a reasonable expectation that discovery will reveal evidence" of retaliation.   Martinez, 986 F.3d at 266 (quoting Fowler, 578 F.3d at 213).  Accordingly, the Motion to Dismiss is granted with respect to Plaintiff's retaliation claims in Counts II, IV, VI, and IX.

### D.  Hostile Work Environment

In Count III, Plaintiff asserts a hostile work environment claim against Penn pursuant to the ADEA.  The United States Court of Appeals for the Third Circuit has assumed, without deciding, that hostile work environment claims are available under the ADEA.  See Slater v. Susquehanna Cnty., 465 F. App'x 132, 138 (3d Cir. 2012) (citation omitted).  To create a hostile work environment, harassment must be "so severe or pervasive that it alters the conditions of the [plaintiff's] employment and creates an abusive environment."  Briggs v. Temple Univ., 339 F. Supp. 3d 466, 503 (E.D. Pa. 2018) (alteration in original) (quoting Howell v. Millersville Univ. of Pennsylvania, 283 F. Supp. 3d 309, 332 (E.D. Pa. 2017), aff'd, 749 F. App'x 130 (3d Cir. 2018)).  Whether conduct is sufficiently severe or pervasive depends upon "the totality of the circumstances, which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.'" Id. (quoting Johnson v. Phila. Hous. Auth., 218 F. Supp. 3d 424, 438 (E.D. Pa. 2016)).  Penn contends that the Amended Complaint does not plausibly allege that the harassment Plaintiff suffered was severe or pervasive.

The Amended Complaint alleges that in Plaintiff's last year at Penn, he was treated differently than in years prior, and was "subjected to disparaging conduct and comments." (Am. Compl. ¶¶ 81, 83.)  It alleges that Lowry spoke openly about the motivation to replace Plaintiff with someone younger as early as September 2021, and that there was an effort, spearheaded by Frei, to "build a case" against Plaintiff in order to terminate him.  (Id. ¶¶ 70, 76, 79.)  More specifically, it alleges that in the context of Plaintiff's termination from the coordinator position, NELC Department leaders repeatedly commented on Plaintiff's age, telling Plaintiff that he "was part of an 'older era that needed to end'" and that he needed to be "replaced" to "make room for new blood." (Id. ¶¶ 55-60.)  As a result of this treatment, Plaintiff allegedly suffered severe mental anguish and emotional distress, including feelings of humiliation and degradation. (Id. ¶¶ 94, 116.)  The Amended Complaint alleges that these conditions led Plaintiff to seek medical treatment in December 2022 and rendered him medically unable to start work in January 2023.  (Id. ¶¶ 95-96.)  It also alleges that despite Plaintiff's complaints, Defendant took no action to investigate or address this mistreatment.  (Id. ¶ 122.)

In sum, the Amended Complaint alleges that Plaintiff was repeatedly disparaged by NELC authority figures based on his age, which was "humiliating" and "interfere[d] with [Plaintiff's] work performance." Briggs, 339 F. Supp. 3d at 503 (quotation omitted).  At this stage, these allegations suffice to plausibly allege that the harassment Plaintiff suffered was severe or pervasive.  Cf. Grasty v. World Flavors, Inc., Civ. A. No. 11-1778, 2011 WL 3515864, at *9 (E.D. Pa. Aug. 11, 2011) (concluding that allegations of ongoing demeaning comments and treatment

by supervisors, which employer failed to address despite complaints, were sufficiently severe or pervasive to state a claim for hostile work environment); Dunn v. Bucks Cnty. Cmty. Coll., Civ. A. No. 13-6726, 2014 WL 2158398, at *2 (E.D. Pa. May 22, 2014) (concluding that allegations of discriminatory and derogatory comments, even lacking precision as to their timing and frequency, sufficed to state a facially plausible hostile work environment claim). Even if, as Defendant argues, additional details are needed to conclusively assess the totality of the circumstances, the very fact-intensive nature of this inquiry makes it ill-suited to dismissal at this early juncture. See Grasty, 2011 WL 3515864, at *9 n.2 (noting that courts "have shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive"); Ingram v. Vanguard Grp., Inc., Civ. A. No. 14-3674, 2015 WL 4394274, at *19 (E.D. Pa. July 17, 2015) ("Because the inquiry is fact-intensive, 'summary judgment provides a more appropriate vehicle to resolve [the severity or pervasiveness of the conduct], as the parties at that stage have had an opportunity to conduct discovery and develop their claims.'" (quoting Long v. Pizza Hut, Civ. A. No. 03-0738, 2003 WL 23019186, at *4 (W.D. Pa. Nov. 5, 2003)). The Motion to Dismiss is therefore denied with respect to the ADEA hostile work environment claim in Count III.

### E. Aiding and Abetting

In Counts VII and X, Plaintiff asserts claims of aiding and abetting discrimination and retaliation against the individual defendants under the PHRA and the PFPO. Both the PHRA and the PFPO "impose individual liability on any person who aids, abets, incites, compels or coerces, or directly or indirectly commits unlawful discrimination." Ahern, 183 F. Supp. 3d at 671 (citing 43 Pa. Stat. Ann. § 955(e); Phila. Code. § 9-1103(h)). Under either statute, a supervisor can be individually liable for aiding and abetting based on "[their] own discriminatory conduct" or "their

failure to take action against discrimination experienced by the employee." Id. (citing D'Altilio v. Dover Twp., Civ. A. No. 06-1931, 2009 WL 2948524, at *12 (M.D. Pa. Sep. 14, 2009)).

To state a claim for aiding and abetting an employer's discrimination or retaliation, the plaintiff must plausibly allege that the employer discriminated or retaliated in the first place. Williams v. Aramark Campus LLC, Civ. A. No. 18-5374, 2020 WL 1182564, at *10 (E.D. Pa. Mar. 12, 2020) ("'For liability to be imposed on an aiding and abetting theory . . . there must be a cognizable predicate offense,' i.e. a violation by the employer of the PHRA's [or PFPO's] primary anti-discrimination provision." (second alteration in original) (quoting Lombard v. Lassip, Inc., Civ. A. No. 17-964, 2017 WL 6367956, at *5 (E.D. Pa. Dec. 13, 2017)). Thus, to the extent a plaintiff's primary discrimination or retaliation claims fail, any corresponding aiding and abetting claim must fail as well. See Elmarakaby v. Wyeth Pharms., Inc., Civ. A. No. 09-1784, 2015 WL 1456686, at *9 (E.D. Pa. Mar. 30, 2015) (dismissing aiding and abetting claim based on dismissal of discrimination claim because "[i]ndividual defendants cannot . . . be liable for violations of Section 955(e) if there is no primary violation of the PHRA" (citing Kaniuka v. Good Shepherd Home, Civ. A. No. 05-2917, 2006 WL 2380387, at *10 (E.D. Pa. Aug.15, 2006); Burgess-Walls v. Brown, Civ. A. No. 11-275, 2011 WL 3702458, at *6 (E.D. Pa. Aug. 22, 2011))). As we have concluded that the Amended Complaint fails to state a claim for disability discrimination and retaliation, we must conclude that it also fails to state a claim for **aiding and abetting such conduct**.

In contrast, we have concluded that the Amended Complaint *does* state an age discrimination claim against Penn. With regard to the individual defendants, the Amended Complaint alleges that Lowry and Sharkey held leadership positions and that Kallberg, Lowry, and Frei were decisionmakers behind the terminations of Plaintiff and Rushdie. (See Am. Compl. ¶¶ 44, 47, 60.) It further alleges that Sharkey, Frei, and Lowry made comments to Plaintiff and

others, variously disparaging Plaintiff and Rushdie based on their ages and advocating for replacing them with younger individuals. (See id. ¶¶ 49, 55-60, 76, 77, 78.) Finally, it alleges that Plaintiff approached Kallberg, presumably in his capacity as Dean, to "report the discrimination and request help" but that neither Kallberg, nor anyone else at Penn, took remedial action. (Id. ¶ 112; see also id. ¶¶ 114, 122.) These allegations suffice to "raise a reasonable expectation that discovery will reveal evidence" that each of the individual defendants aided and abetted discrimination against Plaintiff based on his age. Martinez, 986 F.3d at 266 (quoting Fowler, 578 F.3d at 213).

Accordingly, with respect to Counts VII and X, the Motion to Dismiss is denied to the extent those Counts assert claims of aiding and abetting age discrimination and granted to the extent they assert claims of aiding and abetting disability discrimination and retaliation.

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss is granted with respect to Plaintiff's claims of disability discrimination under the ADA, PHRA, and PFPO (Counts I, V, and VIII) as well as Plaintiff's claims of retaliation under the ADA, ADEA, PHRA and PFPO (Counts II, IV, VI and IX). The Motion is denied with respect to Plaintiff's claims of age discrimination under the ADEA, PHRA, and PFPO, as well as Plaintiff's claim of hostile work environment under the ADEA (Counts III, V, and VIII). Finally, the Motion is granted with respect to Plaintiff's aiding and abetting claims under the PHRA and the PFPO (Counts VII and X) insofar as they assert claims of aiding and abetting disability discrimination and retaliation, but denied insofar as they assert claims of aiding and abetting age discrimination. Accordingly, this case will proceed on the

claims in Count III and those portions of Counts V, VII, VIII, and X that pertain to age discrimination. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.
